IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) | Civil Action No. _____ |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| J.H.S. HOLDINGS, LLC, and ) 4TOP HOSPITALITY GROUP, INC., ) d/b/a AMERIGO ITALIAN RESTAURANT, ) ) | JURY DEMAND |
| Defendants. ) ) | |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of sex/sexual orientation and to provide appropriate relief to an aggrieved party adversely affected by such practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges Defendants 4Top Hospitality Group and J.H.S. Holdings, d/b/a Amerigo Italian Restaurant, operating as an integrated enterprise and or joint employer, subjected Christopher Brown to a hostile work environment based on his sex/sexual orientation; then retaliated against him for complaining about the discrimination by terminating his employment.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed in Memphis, Tennessee, within the jurisdiction of the U. S. District Court for the Western District of Tennessee, Western Division.

## PARTIES

3. At all times relevant hereto, Plaintiff Equal Employment Opportunity Commission (Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e–5(f)(1).

4. At all relevant times, Defendants 4Top Hospitality Group, Inc. and J.H.S. Holdings, LLC, (Defendant Employer) have operated as an integrated enterprise or joint employer.

    (a) Defendant Employer shares common employees.

    (b) Defendant Employer shares in the hiring of employees.

    (c) Defendant Employer alternates compensating employees.

    (d) Defendant Employer uses the same personnel policies and procedures.

    (e) Defendant Employer uses the same human resources office located in Nashville, Tennessee.

    (f) Defendant Employer uses a common board of directors.

    (g) Defendant Employer shares the same principal address in Nashville.

5. Defendant Employer 4Top Hospitality Group, Inc., is a domestic for-profit corporation organized under the laws of the state of Tennessee since 2021, with its principal place

of business located in Nashville, Tennessee, and operating continuously in and by virtue of the laws of Tennessee.

6. At all times relevant hereto, Defendant Employer J.H.S. Holdings, LLC, was a domestic limited liability company organized under the laws of the state of Tennessee since 2009, with its principal place of business located in Nashville, Tennessee, and operating continuously in and by virtue of the laws of Tennessee.

7. At all times relevant Defendant Employer has continuously employed at least 15 employees.

8. At all times relevant hereto, Defendant Employer has continuously been engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII and 42 U.S.C. §§ 2000e(b), (g), and (h.)

## ADMINISTRATIVE PROCEDURES

9. More than 30 days before the institution of this lawsuit, Christopher Brown, a former employee of Defendant Employer, filed a charge of discrimination with the Commission, Charge No. 490-2022-00250, alleging violations of Title VII by Defendant Employer.

10. On July 28, 2022, the Commission issued to the Defendant Employer a Letter of Determination finding reasonable cause to believe Defendant Employer violated Title VII and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

11. The Commission engaged in communications with Defendant Employer to provide Defendant Employer with the opportunity to remedy the discriminatory practices described in the Letter of Determination.

12. The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

13. On August 29, 2022, the Commission issued to Defendant Employer Notice of Failure of Conciliation.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### COUNT I

### HOSTILE WORK ENVIRONMENT BECAUSE OF SEX/SEX ORIENTATION

15. Since at least January 2021, Defendant Employer has engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. § 2000e–2(a)(1) by creating a hostile work environment because of sex/sexual orientation.

16. These unlawful employment practices include Defendant Employer subjecting Christopher Brown to a hostile work environment based on his sex/sexual orientation.

17. Brown is a an openly gay male.

18. Brown does not conform to gender stereotypical norms of male employees.

19. Brown takes pride in all aspects of himself, including being gay.

20. In November 2020, Defendant Employer hired Brown as a waiter at its Amerigo Italian Restaurant in Memphis, Tennessee.

21. Defendant Employer viewed Brown as a "tremendous employee" with and among the customers while employed.

22. Brown was well liked by his coworkers and customers.

23. On or around January 2021, Chris Odom – a coworker and waiter – directed discriminatory homophobic slurs towards Brown based on his belief that Brown did not conform to stereotypical male norms.

24. Employees heard and witnessed the slurs based on Brown's sexual orientation.

25. Odom made many similar comments during this time including "I can't stand your gay ass" and calling Brown a "Fucking Faggot" on several occasions.

26. On or about February 25, 2021, Odom continued to use slurs in the workplace which disparaged Brown's sexual orientation or castigated Brown for not conforming to masculine stereotypes.

27. Employees heard and witnessed the slurs based on Brown's sexual orientation.

28. Odom, without compunction would regularly comment, "that is so fuckin' gay" as if it were normal.

29. Odom asked an employee in Brown's presence, "FAG! Is he not a faggot!?"

30. Management did nothing when Odom made such comments because this was a normal occurrence for Odom and allowed by management.

31. The conduct was not invited or welcomed by Brown.

32. The comments offended and upset Brown.

33. Brown complained to his General Manager, Andrew Fischer, about the conduct.

34. During this meeting, Fischer assured Brown that he would terminate Odom if it happened again.

35. Fischer, however, failed to follow through.

36. Defendant Employer did not investigate the hostile work environment as required by its policy once it learned of the harassment based on Brown's sexual orientation.

37. Fischer did not investigate by speaking with other waiters, servers, cooks, and other employees who interacted with Odom.

38. On July 4, 2021, Brown asked Odom to help with taking out the trash. Odom responded, "your gay ass can do it yourself."

39. The homophobic offensive comments continued regularly.

40. The homophobic comments were sufficiently severe and pervasive to alter the conditions of Brown's employment.

41. Employees believed Brown was targeted because he shows pride in all aspects of himself, including being gay.

42. Management's lack of remedial action caused other employees to avoid working shifts when the harasser was scheduled for fear of being targeted based on their sex/sexual orientation and Odom's oft-expressed disapproval of people who do not conform to gender stereotypes.

43. Employees witnessed management ignore Odom's abuse before and during Brown's last shift.

44. Brown suffered more abuse from his coworker leading up to his discharge.

45. On October 29, 2021, while working a shift with Brown, Odom once again called Brown a "Fucking Faggot Punk."

46. Odom's affront both attacked Brown's sexual orientation and disparaged Brown for a perceived failure to conform to a masculine stereotype.

47. Brown complained to his manager, Fischer, and his assistant manager, Lance Morton, explaining that he could not work with Odom because of his threatening homophobic barbs and slurs.

48. Fischer tried to talk Brown out of making his complaint, imploring him, "Why can't you drop this?" and "What do you want me to do?"

49. To avoid Odom, Brown requested to be moved to a different shift or a different restaurant owned by the parent company.

50. Fischer denied Brown's request.

51. Fischer said they could talk the next day and that Brown should take the day off.

52. On October 31, 2021, Brown met with Fischer. Fischer told Brown that he would not fire Odom despite telling him he would back in January.

53. Fischer ignored Brown's request for a transfer.

54. Brown continued to work until Defendant Employer discharged him for an alleged "no call, no show."

55. Brown denies he was a "no call, no show." And Fischer had not discharged other employees who were a "no call, no show."

56. The effect of the practices complained of above has been to deprive Christopher Brown of equal employment opportunities, cause him emotional distress, and otherwise adversely affect his status as an employee because of his sex/sexual orientation and failure to conform to stereotypical gender norms.

57. The unlawful employment practices complained of above were intentional.

58. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Brown.

## COUNT II    RETALIATORY DISCHARGE

59. Since at least January 2021, Defendant Employer has engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by terminating Brown in retaliation for complaining about sex/sexual orientation discrimination.

60. The unlawful employment practices include retaliating against Brown by discharging him because of his complaints of sex/sexual orientation discrimination by a coworker.

61. Brown is an openly gay male.

62. Brown does not conform to gender stereotypical norms of male employees.

63. Brown takes pride in all aspects of himself, including being gay.

64. In November 2020, Defendant Employer hired Brown as a waiter at its Amerigo Italian Restaurant in Memphis, Tennessee.

65. Brown previously worked at other restaurants owned by Defendant Employer.

66. Defendant Employer viewed Brown as a "tremendous employee" with and among the customers while employed.

67. Brown was well liked by his coworkers and customers.

68. On or around January 2021, Chris Odom – a coworker and waiter – directed discriminatory homophobic slurs towards Brown based on his belief that Brown did not conform to stereotypical male norms.

69. On several occasions detailed above, Brown complained to management about Odom's conduct related to Brown's sexual orientation.

70. Other employees witnessed the abuse.

71. In January of 2021, management notified Brown that any further abuse based on his sexual orientation would result in discharge of the employee causing the harassment.

72. In October of 2021 Brown again complained of harassment based on his sexual orientation at the hands of Odom.

73. On or around October 30, 2021, Brown complained to Fischer, and the front house manager, explaining that he could not work with Odom because of his threatening homophobic barbs and slurs.

74. Knowing Brown was upset, Fisher instructed Brown to go home on October 30, 2021, and agreed to speak with Brown the following day.

75. On or around October 31, 2021, Brown met with Fischer.

76. During the meeting, Fischer tried to talk Brown out of making his complaint.

77. Fischer asked Brown, "Why can't you drop this?" and "What do you want me to do?"

78. Fischer also told Brown that he would not terminate Odom.

79. Later that same day, October 31, 2021, Brown contacted Defendant Employer to request a transfer to another of Defendant Employer's restaurants.

80. Fischer denied Brown's request.

81. Brown notified management that he could not work on a day for which he was scheduled because Defendant Employer scheduled him to work with his harasser.

82. Management had notified Brown that it would not separate Brown from Odom, his harasser by scheduling them to work different shifts.

83. Brown tried to find another employee to cover the shift but was unable to do so.

84. On November 1, 2021, Brown called management prior to his shift to request leave after he could not find someone to cover his shift.

85. Management did not answer the call.

86. Brown called again later that day and was notified by General Manager Andrew Fischer that his employment had been terminated.

87. Defendant Employer terminated Brown less than three days after he complained of the unlawful conduct of the harasser.

88. Defendant Employer terminated Brown less than three days after he notified management that if he continued to work the same shift with his harasser, Brown would be subjected to further unlawful abuse by his harasser.

89. Defendant Employer terminated Brown less than three days after he notified management that he could no longer suffer such abuse due to the impact it was having on him mentally and physically.

90. Defendant Employer terminated Brown because of his complaints.

91. Defendant Employer had no reason to discharge Brown as Brown satisfactorily performed his job as waitstaff.

92. Defendant Employer had not terminated other employees who were "no call, no show."

93. But for Brown's complaint, Defendant Employer would not have discharged Brown.

94. The effect of the practices complained of above has been to deprive Christopher Brown of equal employment opportunities, cause him emotional distress, and otherwise adversely affect his status as an employee because of retaliation.

95. The unlawful employment practices complained of above were intentional.

96. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Brown.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests this Court:

A. Grant a permanent injunction enjoining Defendant Employer, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any discriminatory conduct based on sex/sexual orientation, including but not limited to, fostering, or permitting a hostile work environment and retaliating against employees who engage in statutorily protected activity in the workplace.

B. Order the Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for gay employees, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Christopher Brown by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, interest, in amounts to be determined at trial.

D. Order Defendant Employer to make whole Christopher Brown by providing compensation for past and future pecuniary losses, including appropriate backpay with interest, resulting from the unlawful employment practices described in the paragraphs above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Christopher Brown by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.   Order Defendant Employer to pay Christopher Brown punitive damages for its malicious and reckless conduct, as described in the paragraphs above, in an amount to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest including but not limited to post-judgment interest.

H.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,


GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

AMY BLACK
Assistant Regional Attorney
TN Bar No. 016102
amy.black@eeoc.gov

GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051
gary.sullivan@eeoc.gov

 */s/ Donnie Snow*
DONNIE SNOW
Trial Attorney
TN Bar No. 030585
donnie.snow@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
Telephone: (901) 685-4644